# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| --- | --- | --- |
|  | : | NO. 08-541-03 |
| v. | : |  |
|  | : | CIVIL ACTION |
| DOMINGO MERCADO | : | NO. 11-778 |
|  | : |  |

**DuBOIS, J.**                                                                                                          May 1, 2012

**M E M O R A N D U M**

## I. INTRODUCTION

Domingo Mercado is serving a five-year sentence in federal custody for his conviction of possession of heroin with intent to distribute. Presently before the Court is Mercado's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.[1] The motion includes three claims of ineffective assistance of counsel. The Court conducted an evidentiary hearing on those claims on April 10, 2012. For the reasons that follow, the motion is granted in part and denied in part.

## II. BACKGROUND

The background of this case is set forth in detail in <u>United States v. Mercado</u>, 610 F.3d 841 (3d Cir. 2010), and will be repeated in this Memorandum only to the extent necessary to explain the Court's rulings.

A federal grand jury returned an Indictment on September 10, 2008, charging Mercado

---

[1]Before he filed his Amended Motion with the assistance of counsel, Mercado filed a <u>pro se</u> Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. In light of the Court's ruling on the Amended Motion, the <u>pro se</u> motion is denied as moot.

and his co-defendants, Hiram Coira-Soto and Dinoel Rodriguez-Nunez, with possession of heroin with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); possession of heroin within 1,000 feet of a school with intent to distribute, in violation of 21 U.S.C. § 860(a); and aiding and abetting both offenses, in violation of 18 U.S.C. § 2. Rodriguez-Nunez pled guilty to both counts charged, Coira-Soto absconded, and Mercado proceeded to trial. Mercado was found guilty and sentenced to five years' imprisonment, the mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(B).

A. Evidence Presented at Trial

The government called six witnesses at trial: Rodriguez-Nunez, four DEA agents, and a Philadelphia police officer who assisted with the arrest. The primary evidence against Mercado was Rodriguez-Nunez's testimony that Mercado was present at three meetings that took place on August 14, 2008, the day of their arrest. At the meetings, Coira-Soto and Rodriguez-Nunez discussed and then completed a heroin transaction. See Mercado, 610 F.3d at 843. Rodriguez-Nunez testified at trial that Mercado did not speak or otherwise participate in the meetings. Id. at 844. Drug Enforcement Administration ("DEA") agents conducting surveillance witnessed the third meeting but did not see Mercado.[2] Id. at 843.

After the third meeting, DEA agents arrested Rodriguez-Nunez and recovered a package of heroin from the right rear pocket of his pants. Id. at 844. Rodriguez-Nunez immediately agreed to cooperate with the agents and, at their direction, placed a recorded call to the seller of the drugs. (2/18/09 Trial Tr. 34, 37.) Rodriguez-Nunez told the seller that he was ready to pay

---

[2]DEA Agent Patrick Barry testified that he saw two people inside Coira-Soto's car during the third meeting, (2/18/09 Trial Tr. 48), but he could not see either person's face, (id. at 54).

him, and shortly thereafter, Mercado and Coira-Soto returned to the scene in a maroon GMC Envoy. (Id. at 37-38.) Coira-Soto was in the driver's seat, and Mercado was in the passenger seat. (Id. at 38.) DEA agents arrested both Coira-Soto and Mercado at that time. (Id.)

The jury first heard about Mercado's presence at the August 14, 2008, meetings through the testimony of the government's first witness, DEA Special Agent David Pedrini. Agent Pedrini participated in the investigation and surveillance that preceded Mercado's arrest. (See 2/18/09 Trial Tr. 16-38.) He did not see Mercado until he arrested him. (Id. at 44.) However, he testified that, immediately after Rodriguez-Nunez was arrested and agreed to cooperate, Rodriguez-Nunez told him about Mercado's involvement.

The first such testimony occurred on direct examination:

> Q: Okay. And what does Mr. Rodriguez do once you get him back inside the house?
> A: He agreed to cooperate with us immediately.
> Q: Okay. And how does he cooperate?
> A: He told us that what was in his back pocket was heroin, and it was 230 grams of heroin, and <u>he told us that he had received it from the people who were in the black Ford Taurus</u>.
> Q: Okay.
> A: <u>The people in the black Ford Taurus had instructed him</u>, that once he had done the deal and he got the money for the drug transaction, Mr. Rodriguez-Nunez was instructed to contact them by telephone so they could come back and get the money.

(Id. at 34 (emphasis added).) Mercado's trial counsel did not object to this testimony.

Shortly thereafter, Agent Pedrini testified regarding additional statements by which Rodriguez-Nunez implicated Mercado, again without objection from Mercado's trial counsel:

> Q: Okay. Now, back at D.E.A. Headquarters, did Mr. Rodriguez continue to cooperate with you?
> A: He did.
> Q: And was he asked about, any questions about who it was that had

-3-

> delivered the drugs to him in front of his house from the black car?
> A: Yes.
> Q: What did he tell you?
> A: He told us that the two other people we arrested with him were the individuals who were in the black Taurus that delivered the heroin.
> Q: Did he identify either of those individuals?
> A: He identified both of them in the D.E.A. office building.
> Q: And who did he identify as being the driver of the vehicle?
> A: Hiram [Coira-]Soto was the driver and Mr. Mercado was the passenger.

(Id. at 38-39 (emphasis added).)

On cross-examination, defense counsel questioned Agent Pedrini regarding the statements Rodriguez-Nunez made after his arrest. The testimony elicited on cross-examination established that Rodriguez-Nunez had not told Agent Pedrini who handed him the heroin, (id. at 39), and that Rodriguez-Nunez told Agent Pedrini he had never spoken with Mercado, (id. at 41). However, this line of questioning led the government to inquire on redirect examination, again with no objection by defense counsel:

> Q: Now, counsel just asked you some questions about whether or not Mr. Rodriguez told you anything about having any conversations with Mr. Mercado.
> Did Mr. Rodriguez ever talk to you about any meetings that he had where Mr. Mercado was present?
> A: He did.
> Q: Tell us about that.
> A: He said he met with Hiram [Coira-]Soto and Mr. Mercado at that Front and Lippincott location prior to the drug deal.
> Q: Where did he tell you that Mr. Mercado was during that meeting?
> A: He was on—he was in the passenger seat of the vehicle. The same black Ford Taurus.
> Q: And did he tell you specifically who was inside that car when the drugs were delivered to him, Mr. Rodriguez? Did he tell you—
> A: He did.
> Q: —who was inside that car?
> A: He said the driver was Mr. Hiram [Coira-]Soto and the passenger was Mr. Mercado.

(Id. at 42-43 (emphasis added).)

The government called Rodriguez-Nunez as a witness later the same day. Rodriguez-Nunez's account was consistent with the statements that Agent Pedrini said he made on the day of his arrest. Rodriguez-Nunez testified that Mercado had accompanied Coira-Soto, in a black Ford Taurus, to a meeting at which Coira-Soto and Rodriguez-Nunez discussed the proposed drug transaction. (Id. at 76-77.) He acknowledged that he did not speak with Mercado at that meeting. (Id. at 78.) He clarified later in his testimony that there were two pre-transaction meetings on Front Street, with Coira-Soto and Mercado arriving in a different car to each one. (Id. at 86.) Rodriguez-Nunez testified further that Coira-Soto and Mercado returned later that day to deliver the drugs. (Id. at 78.) He stated that he received the bag of drugs from the passenger side of the black Ford Taurus, where Mercado was sitting, although he did not remember whether Coira-Soto or Mercado had handed it to him. (Id. at 83-84.)

On cross-examination, defense counsel attempted to put Rodriguez-Nunez's credibility in question by emphasizing his guilty plea in this case. (See, e.g., id. at 92.) He also elicited testimony reiterating that Rodriguez-Nunez had never spoken with Mercado, (see, e.g., id. at 96, 110), and did not remember who had handed him the drugs, (see, e.g., id. at 100). He prodded Rodriguez-Nunez to admit that he would "get a big break by cooperating" with the government, (id. at 100), although Rodriguez-Nunez resisted doing so. He pointed out that under Rodriguez-Nunez's plea agreement, the government would move for a downward departure under § 5K1.1 of the United States Sentencing Guidelines based on his cooperation. (Id. at 104-07).

In addition to the testimony regarding the meetings, the government relied on telephone

records to link Mercado to the drug transaction. DEA Agent Samir Poules testified that, after Mercado, Rodriguez-Nunez, and Coira-Soto were arrested, he confiscated the cell phones that were in their possession. Mercado, 610 F.3d at 844. He averred that toll records later obtained by the government showed that the cell phone seized from Rodriguez-Nunez ("Rodriguez-Nunez's cell phone") had called the cell phone seized from Coira-Soto ("Coira-Soto's cell phone") twice before 11:00 a.m. on the day of their arrest. (Id.) There were then three short calls between Coira-Soto's cell phone and the cell phone seized from Mercado. (Id.) After the three short calls, Coira-Soto's cell phone called Rodriguez-Nunez's cell phone. (Id.)

B. Mercado's Rule 29 Motion

At the close of the government's evidence, Mercado's trial counsel presented an oral Motion for Judgment of Acquittal under Rule 29 of the Federal Rules of Criminal Procedure, arguing that the government had presented no evidence that Mercado aided and abetted the drug transaction. (See 2/18/09 Hr'g Tr. 164-65.) The Court reserved ruling on the motion until after receiving the jury verdict but advised counsel, "I can only tell you that I view it as a very, very close case . . . . I don't recall in 20 years on the bench a more close contested Rule 29 motion." (Id. at 180.) On February 19, 2009, the jury returned a verdict of guilty as to both counts.

The next morning, after hearing additional argument by counsel, the Court denied Mercado's Rule 29 motion. The basis for the denial was the testimony that Rodriguez-Nunez had seen Mercado with Coira-Soto a total of four times throughout the day of their arrest—at two pre-transaction meetings, when the heroin was transferred, and when they were arrested:

> THE COURT: In my judgment, had the defendant been present on only one occasion, the occasion when the drugs were delivered, the Rule 29 Motion would be granted. . . . [T]he fact that the defendant

> was present four times takes this case out of the rule that mere presence, where the drugs are being delivered, and mere presence in the car in which they're being delivered, is not enough.
>
> Mere presence once, yes. Mere presence four times, I say no. That prevents me from saying that no rational trier of . . . fact could find the defendant guilty beyond a reasonable doubt.

(2/20/09 Hr'g Tr. at 46-47.) In ruling on the motion, the Court reiterated that it was "a very close case," (id. at 43), and expressed disagreement with the jury verdict, (see id. at 46-47 ("I think looking hard at the meaning of 'reasonable doubt,' and looking at the Government's evidence, if I had been sitting as a juror, I would have voted for a verdict of not guilty.").) Nonetheless, Rule 29 motions are subject to a deferential standard.[3] Considering Rodriguez-Nunez's testimony in conjunction with the telephone records, the Court denied defendant's motion for acquittal.

The Third Circuit affirmed the denial of defendant's Rule 29 motion, noting, like this Court had, that Mercado's case was close but the standard of review was deferential. See Mercado, 610 F.3d at 849. The appeals court held that evidence of Mercado's presence with Coira-Soto on four occasions throughout the day in two different cars, viewed in conjunction with the pattern of telephone calls, was sufficient to support the conviction:

> Mercado was not present during the drug transaction on one occasion, but repeatedly. Evidence of repeated presence suggests Mercado was not present by accident, but rather participated in and facilitated the drug possession. This is particularly true because [Coira-Soto] and Mercado switched cars on three occasions during the day; thus, Mercado got out of one of [Coira-Soto]'s cars and chose to get into another car on three separate instances to continue accompanying [Coira-Soto] at important junctures during a prolonged drug transaction.

---

[3]Under that standard, the Court must "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." United States v. Smith, 294 F.3d 473, 476 (3d Cir. 2002) (citation omitted).

> . . . .
>
> Although we realize other inferences are possible from the evidence offered, we believe that if the evidence is viewed in the light most favorable to the Government, a reasonable juror could infer that Mercado, at a minimum, encouraged [Coira-Soto] to possess and distribute heroin based on his repeated presence in [Coira-Soto]'s cars and their phone communications.

Id. at 848.

Mercado timely filed the instant motion, which sets forth three claims of ineffective assistance of trial counsel: (1) failure to object on hearsay grounds to Agent Pedrini's testimony recounting Rodriguez-Nunez's post-arrest statements; (2) failure to request a fingerprint analysis of the bag of heroin, which, Mercado asserts, would have shown that he never touched the bag; and (3) failure to advise Mercado of the potential benefits of pleading guilty and the sentencing consequences of a conviction at trial. The Court held an evidentiary hearing on all three claims on April 10, 2012. At the beginning of the hearing, Mercado withdrew the third claim. The evidence and argument presented by the parties were thus limited to the first two claims.

**III. DISCUSSION**

Mercado alleges that he was denied his Sixth Amendment right to effective assistance of counsel. "Strickland v. Washington supplies the standard for addressing a claim of ineffective assistance of counsel." United States v. Smack, 347 F.3d 533, 537 (3d Cir. 2003). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 687-88 (1984).

This standard requires a familiar two-part inquiry. "First, the defendant must show that

counsel's performance was deficient," that is, "that counsel's representation fell below an objective standard of reasonableness." Id. The measure for counsel's performance under this first prong is "whether counsel's assistance was reasonable considering all the circumstances," including "prevailing professional norms." Id. "Second, the defendant must show that [counsel's] deficient performance prejudiced the defense." Id. at 687. The defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "The effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial: 'a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989) (quoting Strickland, 466 U.S. at 696).

  A. Failure to Object to Hearsay

Mercado's first ineffective-assistance claim is based on trial counsel's failure to object to alleged hearsay statements relating to the critical issue in the case—the number of times Rodriguez-Nunez saw Mercado in Coira-Soto's presence. Specifically, trial counsel did not object when Agent Pedrini recounted the statements Rodriguez-Nunez made to him and other DEA agents shortly after being arrested. For the reasons set forth below, the Court concludes that this failure to object constituted ineffective assistance of counsel. On this ground, Mercado is entitled to a new trial, and his conviction is vacated.

  1. The Parties' Arguments

Mercado argues first that Agent Pedrini's statements were inadmissible hearsay, not subject to any hearsay exception. (Mercado's Mem. Law 12.) He further contends that trial

counsel's failure to object constituted deficient performance, as "there can be no reasonable explanation for trial counsel's failure to object to inadmissible statements that served to corroborate the testimony of the government's one and only cooperating witness and thereby support the prosecution's theory of the case." (Id. at 14.) Finally, Mercado claims that trial counsel's deficient performance prejudiced his defense. The case was extremely close, and the number of times Mercado and Coira-Soto were seen together was "the critical issue in the case." (Id. at 15.) According to Mercado, Agent Pedrini's testimony "allowed the government to corroborate Rodriguez-Nunez's testimony before he even took the stand." (Id. at 9.)

With respect to the hearsay argument, the government responds that the statements at issue were offered as background—to show why a recorded call was made from Rodriguez-Nunez to Coira-Soto and why Mercado was arrested—rather than for the truth of the matter asserted. (Gov't Resp. 6) The government further contends that trial counsel made a strategic decision not to object because it allowed him to "cross-examine Agent Pedrini on the points that advanced his theory of the case." (Id. at 7-9.) Finally, the government argues that Mercado suffered no prejudice because (1) Agent Pedrini's testimony "was only used to tell the full story of how Mercado and Coira[-]Soto came to be arrested," (2) another agent testified that he saw two people in the black Taurus (although he could not identify Mercado), and (3) Rodriguez-Nunez testified and was cross-examined by Mercado's trial counsel. (Id. at 6-7.)

### 2. Trial Counsel's Testimony at the Evidentiary Hearing

At the April 10, 2012, evidentiary hearing, defendant's trial counsel offered two justifications for his failure to object to Agent Pedrini's testimony.

First, he explained that his overall strategy had been to "make the [g]overnment literally

dot its I's and cross its T's and prove to a jury beyond a reasonable doubt that Mr. Mercado was a willing participant other than just a ride-along or a friend of a person that was involved in drug trafficking that day." (4/10/12 Hr'g Tr. 8.) Based on this theory of the case, trial counsel stated that he did not object to Agent Pedrini's testimony because

> it really kind of corroborated my whole position, which was that Mr. Mercado was just a ride-along. . . . So when P[e]drini[4] got on the stand and said that Rodriguez-Nunez had said that Mr. Mercado was driving around with him, along with all the other things that he said, I had the opportunity at some point down the road to argue to a jury, if Mr. Mercado were involved, then why wouldn't Rodriguez-Nunez, who is a cooperator, have given him up from the very beginning?

(Id. at 11.)

He offered a second justification on cross-examination, testifying that he had hoped Agent Pedrini would create "some contradictions or distinctions between the testimony that would be forthcoming from Rodriguez-Nunez later in the day." (Id. at 25.) On re-cross, he attempted to clarify this point as follows:

> Q: What you have told us, I think, is that you were trying to avoid having Mr. Rodriguez-Nunez enhance and embellish the involvement of Mr. Mercado, correct?
> A: Well, no. I didn't have any control over Rodriguez-Nunez. What my hope was and it materialized favorably towards—for Mr. Mercado was that Agent Pedrini would not embellish what had been told to him by Rodriguez-Nunez and what as a skeleton, as you often know, police reports don't have all the meat on the bone and oftentimes agents or the police officers will get on the stand and add, you know, 50 pounds to a skeleton. Agent Pedrini didn't do that. Agent Pedrini simply took the stand and said, he never told me he got the drugs from Mercado.

(Id. at 31.) The Court takes this testimony to mean trial counsel believed that, in the event that

---

[4]Agent Pedrini's name is misspelled as "Padrini" in the transcripts. The Court corrects the spelling in all quotations.

-11-

Rodriguez-Nunez fabricated his testimony, the jury would discount that testimony because it had already heard Agent Pedrini recount the statements Rodriguez-Nunez made upon his arrest.

Upon further questioning, however, trial counsel acknowledged that if Rodriguez-Nunez had attempted to "enhance" his testimony regarding Mercado's involvement, trial counsel could have impeached him with written investigation reports or by calling an agent as a rebuttal witness. (Id. at 32.) Moreover, trial counsel agreed on cross-examination that Rodriguez-Nunez was the only witness who had seen Mercado with Coira-Soto prior to their arrest. (Id. at 16.)

### 3. Deficiency

The Court agrees with Mercado that there is no reasonable explanation for trial counsel's failure to object to the testimony at issue. The testimony was inadmissible hearsay, and neither of the strategic justifications trial counsel offered at the evidentiary hearing is persuasive.

#### a. Hearsay Analysis

"'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay is inadmissible unless an exception to the rule against hearsay applies. See Fed. R. Evid. 802. In this case, Agent Pedrini's statement was hearsay and there was no applicable exception.

First, the Court rejects the government's argument that the statements were admissible for the nonhearsay purpose of establishing background. It is true that, under some circumstances, officers are permitted to recount out-of-court statements in explaining why they took particular actions. However, "the use of out-of-court statements to show background has been identified as an area of 'widespread abuse.'" United States v. Sallins, 993 F.2d 344, 346 (3d Cir. 1993)

(quoting 2 McCormick on Evidence § 249, at 104 (4th ed. 1992)). The Third Circuit thus approaches arguments like the government's with caution. If an officer can explain his actions "by saying he acted 'upon information received,' any further revelation of the contents of the information received is impermissible hearsay." United States v. Price, 458 F.3d 202, 210 (3d Cir. 2006) (citing Sallins, 993 F.2d 344). Furthermore, "[i]f the legitimate non-hearsay probative value of particular testimony is nil or de minimis, and the substantive (hearsay) value is great, then it should be excluded." Id. at 208.

In this case, Agent Pedrini's testimony was not admissible to establish background. The jury would have understood Agent Pedrini's account of events if he had testified merely that the DEA agents had acted based upon information received. On the other hand, while the testimony had little probative value for nonhearsay purposes, its substantive value was great—it corroborated the testimony of the government's key witness on the determinative issue in the case. It was thus inadmissible for the nonhearsay purpose of establishing background for the DEA agents' actions.

In addition, no exception to the hearsay rule applies. Mercado is correct that the statements could not have been admitted as prior consistent statements, as Rodriguez-Nunez made them after he was arrested and told DEA agents he would cooperate with them. See Tome v. United States, 513 U.S. 150, 156 (1995) (adopting the common-law rule that "a prior consistent statement introduced to rebut a charge of recent fabrication or improper influence or motive" is admissible only if it was made "before the alleged fabrication, influence, or motive came into being"). At the evidentiary hearing, trial counsel speculated that the testimony might have been admissible as a co-conspirator statement. The Court rejects this argument, as

Rodriguez-Nunez's confession to DEA agents after he agreed to cooperate with them was not a "statement made in furtherance of the conspiracy." United States v. McGlory, 968 F.2d 309, 333 (3d Cir. 1992).

The government has offered no other ground on which the Court could have admitted Agent Pedrini's testimony, and the Court has identified none in its own review. The testimony was thus inadmissible. Had trial counsel objected, the Court would have precluded Agent Pedrini from recounting Rodriguez-Nunez's post-arrest statements.

### b. Trial Counsel's Proffered Strategic Justifications

Analysis of the evidentiary question does not resolve whether Mercado is entitled to relief. In conducting the Strickland analysis, a court must determine whether, avoiding "the distorting effects of hindsight," an attorney's decision could be considered "reasonable professional assistance" constituting "'sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. State of La., 350 U.S. 91, 101 (1955)). In this case, the government and trial counsel offered two potential strategic bases for a decision not to object to Agent Pedrini's testimony. Neither purported justification supports a conclusion that trial counsel provided Mercado with reasonable professional representation.

The first argument—and the one on which the government relies most heavily—is that trial counsel viewed Agent Pedrini's testimony as an opportunity to reemphasize his theory of the case. Trial counsel's theory was that Mercado was "merely present" during Rodriguez-Nunez and Coira-Soto's meetings, which would be insufficient to sustain a conviction. See, e.g., Mercado, 610 F.3d at 846. Because trial counsel did not object on direct examination when Agent Pedrini testified to Mercado's involvement, trial counsel was able to emphasize this theory

in cross-examining Agent Pedrini, eliciting testimony that Rodriguez-Nunez never said Mercado was actively involved.

The major flaw in this argument, however, is that Agent Pedrini's testimony corroborated that Rodriguez-Nunez saw Mercado with Coira-Soto three times throughout August 14, 2008—once at Front and Lippincott prior to the drug transaction,[5] once when the heroin was transferred, and once at the time of Mercado and Coira-Soto's arrest. Mercado's repeated presence with Coira-Soto was the primary basis on which this Court and the Third Circuit denied relief to Mercado, and trial counsel acknowledged at the evidentiary hearing that it was a difficult fact for his client, (see, e.g., 4/10/12 Hr'g Tr. 14, 18-19). "Even given the wide latitude afforded strategic decisions of counsel, . . . it could not have been 'sound trial strategy' to allow corroborating, incriminating testimony to come into evidence . . . . " Means v. Horel, 805 F. Supp. 2d 1013, 1024 (E.D. Cal. Apr. 6, 2011).

Trial counsel allowed a government agent to corroborate Rodriguez-Nunez's testimony on this key point before Rodriguez-Nunez even took the stand. He thus forfeited a vital opportunity to cast doubt on the account that Rodriguez-Nunez, a cooperating witness, would provide. Cf. United States v. Evans, 216 F.3d 80, 85 (D.C. Cir. 2000) (holding that, in erroneously permitting an FBI agent to testify regarding an informant's statements, a district court allowed a "clean-cut FBI agent" to "tell[] [the] story" of a "less-than-reputable convict"). Trial counsel's argument that he chose not to object because Agent Pedrini's testimony bolstered Mercado's case is unpersuasive. Agent Pedrini's testimony had no incremental probative value

---

[5]Rodriguez-Nunez also testified to a second pre-transaction meeting at Front and Lippincott.

with regard to the lack of interaction between Mercado and Rodriguez-Nunez, because trial counsel adduced the same testimony on cross-examination of Rodriguez-Nunez. (See 2/18/09 Trial Tr. 96-97.) Trial counsel's failure to object to Agent Pedrini's testimony thus added no benefit to Mercado's case but caused significant prejudice, corroborating Rodriguez-Nunez's testimony on a highly damaging issue.

Trial counsel's second explanation also fails. He asserted that he chose not to object to Agent Pedrini's testimony because, while he anticipated that Rodriguez-Nunez's trial testimony might overstate Mercado's involvement in the drug transaction, he hoped that "Agent Pedrini would not embellish what had been told to him by Rodriguez-Nunez." (4/10/12 Hr'g Tr. 31.) Again, the Court takes this to mean trial counsel believed that, if Rodriguez-Nunez fabricated testimony, the jury would credit Agent Pedrini over Rodriguez-Nunez, having already heard Agent Pedrini recount the statements Rodriguez-Nunez made upon his arrest.

This explanation is illogical. Trial counsel could have counteracted any fabrication by Rodriguez-Nunez through far less injurious means. Had Rodriguez-Nunez's responses on direct examination overstated Mercado's involvement, trial counsel could have impeached him with the statements he made at the time of his arrest, as recounted in written investigation reports. This course of action would have minimized the impact of any embellishment by Rodriguez-Nunez while avoiding the damaging effects of Agent Pedrini's hearsay, which was offered before Rodriguez-Nunez even took the stand.

There is no reasonable strategic explanation for trial counsel's failure to object. The Court thus concludes that trial counsel's performance was deficient under Strickland.

#### 4. Prejudice

Trial counsel's deficient performance with respect to this issue prejudiced Mercado's trial. "In assessing prejudice, the appropriate question is 'whether there is a <u>reasonable probability</u> that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" <u>Gray</u>, 878 F.2d at 710 (emphasis added) (quoting <u>Strickland</u>, 466 U.S. at 695). The defendant "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." <u>Strickland</u>, 466 U.S. at 693. "The effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial: 'a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" <u>Gray</u>, 878 F.2d at 711 (quoting <u>Strickland</u>, 466 U.S. at 696).

Mercado's case was close, as this Court, the Third Circuit, and counsel for both parties have acknowledged. Any deficiency of trial counsel was thus more likely to affect the outcome of the case than if the government had possessed stronger evidence of Mercado's guilt. <u>Cf. Reddick v. Haws</u>, 120 F.3d 714, 716 (7th Cir. 1997) (holding that trial counsel's failure to object to hearsay did not prejudice a defendant where "it [was] clear that there was substantial proof of [the defendant's] guilt independent of whatever out-of-court statements Illinois hearsay rules would not have permitted"). As stated above, Rodriguez-Nunez's testimony that he saw Mercado with Coira-Soto four times on the day of their arrest was the key evidence supporting Mercado's conviction. All of the government's other witnesses, on the other hand, saw Mercado only once: when they arrested him. Counsel could have made powerful use of Rodriguez-Nunez's status—he was a convicted felon cooperating with the government pursuant to a plea

-17-

agreement—to minimize the damage Rodriguez-Nunez could do to Mercado's defense. Instead, however, he permitted Agent Pedrini's prior testimony to bolster Rodriguez-Nunez's credibility regarding Mercado's presence at one of the pre-transaction meetings and the meeting at which the heroin was transferred. Indeed, the government's closing argument relied on Agent Pedrini's testimony for that purpose.[6]

There is thus a "reasonable probability" that trial counsel's deficient performance altered the outcome of Mercado's trial. Mercado is entitled to relief on this claim, and his conviction is vacated.

B. Failure to Request a Fingerprint Analysis

Mercado's second assertion is that trial counsel rendered ineffective assistance because he failed to request a fingerprint analysis of the bag of heroin seized from Rodriguez-Nunez. Mercado argues that an analysis showing that his fingerprints were not on the bag would have helped prove that he was merely an innocent observer of the transaction between Coira-Soto and Rodriguez-Nunez.

The Court rejects this claim, as counsel's performance in this respect constituted reasonable strategy. Trial counsel testified credibly that he considered the possibility of requesting a fingerprint analysis. (See 4/10/12 Hr'g Tr. 10.) He decided not to request such an analysis based on a rational determination that the potential costs outweighed the potential benefits: he feared that a fingerprint analysis would show that Mercado had, in fact, touched the

---

[6]In her closing argument, government counsel pointed out that, immediately after his arrest, Rodriguez-Nunez told agents about "the person that he saw in the car at the meeting at Front and Lippincott" and "the person in the car that delivered the drugs." (2/19/09 Trial Tr. 43.) She advised the jury, "[Y]ou can use that to assess his credibility and whether or not you believe he's telling the truth." (Id.)

drugs, thus destroying his "mere presence" theory. (Id. at 9.) Instead of relying on a fingerprint analysis, trial counsel emphasized to the jury repeatedly that Rodriguez-Nunez did not remember which individual—Mercado or Coira-Soto—had actually handed him the heroin. (See, e.g., 2/19/09 Trial Tr. 50 ("[I]f [Rodriguez-Nunez] really wanted to gild his own lily he could have said . . . that afternoon when I went to get the drugs [Mercado] grabbed them and he handed them to me. . . . Did he say that? He never said that.").) Even Mercado's appointed counsel conceded at the evidentiary hearing that this was a "legitimate strategic decision." (4/10/12 Hr'g Tr. 35.) The Court thus denies Mercado's amended motion with respect to the fingerprint claim.

    C. Failure to Discuss Possibility of Guilty Plea

Mercado's third claim is based on trial counsel's alleged failure to discuss with him the possibility of negotiating a guilty plea, the benefits of pleading guilty, and the sentencing consequences of a trial conviction. As stated above, Mercado withdrew this claim at the evidentiary hearing. The Court thus denies the amended motion with respect to this claim.

**IV. CONCLUSION**

For the foregoing reasons, Mercado's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody is granted with respect to the hearsay claim and denied in all other respects. Mercado's pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody is denied as moot.

An appropriate Order follows.